UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:18-CR-460 |
| | § | |
| MANUEL DIAZ | § | |

## ORDER ON MOTION TO SUPPRESS

Before the Court is Defendant Manuel Diaz's motion to suppress. D.E. 17. Defendant is charged by indictment with one count of distribution of child pornography and one count of possession of child pornography. D.E. 9. The Government filed a response (D.E. 23) and the Court held a hearing on the motion on September 5, 2018. Both parties submitted additional briefing. D.E. 26; D.E. 27. For the following reasons, the Court DENIES Defendant's motion to suppress.

## FACTS

On April 27, 2018, Manuel Diaz (Diaz) went to a Walgreens store in Corpus Christi to print photos from his cell phone. Diaz asked a store clerk for help printing a photo from his cell phone because it was not displaying on the photo terminal. Diaz handed his phone to the store clerk. While the store clerk scrolled through his phone to locate the photo to be printed, he came across hundreds of pornographic images. The store clerk testified that some of the images were of young girls. Concerned about what he had seen, the store clerk surreptitiously asked a coworker to assist Diaz and confirm whether he also saw child pornography on Diaz's phone. The second clerk did so, and they notified the store manager, who called the police. Two officers responded to the call.

1 / 7

The store employees identified Diaz to the officers, and as soon as Diaz purchased his photos, Officer Phillip Peterson approached him. Footage from Officer Peterson's body camera shows that he told Diaz about the allegation that he had photos of child pornography. Diaz silently handed the officer his printed photos. Officer Peterson confirmed that they were not pornographic images.

While Officer Jared Beam waited with Diaz, Officer Peterson privately questioned the store clerks and the manager who reported the incident. The first store clerk reported "2,000 pictures of porn" on Diaz's phone and some with naked girls. He described the girls as "14 or 15" years old and "small." He reiterated that the photos were all pornographic. The manager stated that he was told by the second clerk that there were men in the photos. The second clerk then walked in and confirmed that he saw photos of "younger, younger" girls in Diaz's phone and "you could tell they looked young."

As the clerks were describing the photos, Officer Peterson contacted dispatch and ran a warrant search on Diaz. Dispatch reported back, "Subject is showing to be a registered sex offender out of Texas, there'll be no other 29's. Clear."[1] He walked back to Diaz and handcuffed him.

While walking Diaz to the police car and without issuing any *Miranda* warnings, Officer Peterson explained to him that he had a warrant for his arrest. And they were "going to file and put a hold on his phone for the detectives to look through, so if there's

---

[1] A "29" is a warrant. Officer Peterson testified that he interpreted the dispatcher's response to mean that Diaz had a warrant for his arrest, and he assumed it was a municipal warrant because dispatchers do not usually provide other information for municipal warrants. A later search did not reveal a municipal warrant.

anything in there we need to know about, just let us know now." Diaz admitted that he had pornography on his phone. When asked if it was child pornography, Diaz said yes.

Diaz asked what type of warrant he had and Officer Peterson replied, "a municipal court warrant." Conferring with Officer Beam about the municipal warrant, Officer Peterson said, "we'll hook him up with that." Diaz was then transported to the Retama Public Library, the location of the Internet Crimes Against Children (ICAC) unit at the time. Diaz met with Detectives Alicia Escobar and Rob Richey. After receiving his *Miranda* warnings, Diaz signed a statement waiving his rights. Diaz withheld consent to search his phone, but confessed that it contained about 40 to 50 images and one video of child pornography. Diaz unlocked his phone and showed the detectives his phone's photo gallery. D.E. 26, p. 17. Based on their training and experience, the detectives believed that the gallery contained child pornography.

The detectives arrested Diaz for possession of child pornography. A search warrant confirmed that Diaz had child pornography on his phone and he had sent one of the photos through a messaging app. Arguing that he was arrested at the Walgreens without a warrant or probable cause, Diaz now seeks to suppress all evidence obtained from his search and seizure as fruit of the poisonous tree.

## ANALYSIS

**A. Probable Cause**

Under the Fourth Amendment, a warrantless arrest must be supported by probable cause. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (citing *United States v. Watson*, 423 U.S. 411, 424 (1976)). "Probable cause for a warrantless arrest exists when the

totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Garcia*, 179 F.3d 265, 268 (5th Cir. 1999) (citing *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995)). The information obtained to establish probable cause must be reasonably trustworthy. *United States v. Johnson*, 445 F.3d 793, 796 (5th Cir. 2006) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Diaz argues that Officer Peterson lacked probable cause to arrest him for possession of child pornography and unlawfully arrested him based on a false belief that Diaz had a warrant. Because Officer Peterson had probable cause to arrest Diaz based on the possession of child pornography, the misunderstanding about an outstanding arrest warrant is superfluous. At the time of the arrest, Officer Peterson knew of the following facts: two store clerks had seen naked photos of young girls on Diaz's phone, the clerks identified Diaz as the suspect, and Diaz was a registered sex offender. The store clerks had viewed the photos on Diaz's phone separately and both confirmed that the photos displayed noticeably young, naked girls.

Diaz argues that Officer Peterson had no more than a bare suspicion that Diaz possessed child pornography, because the statements of the eyewitnesses are insufficient to support the belief that the pictures of the naked girls were indeed pornographic. The Court disagrees. Officer Peterson had no reason to question the credibility of the two store clerks or believe they had inaccurately described the photos.

The Government cites to *United States v. Burbridge,* 252 F.3d 775 (5th Cir. 2001), for the proposition that credible eyewitness testimony can establish probable cause. In

*Burbridge*, a police officer pulled over a suspect solely based on a 911 phone call made by a couple. *Id.* at 777. The husband and wife had seen the suspect carry a gun in a store parking lot, followed him in their car, and stayed on the phone with the dispatcher until the officer pulled over the suspect. *Id.* Only after the suspect was handcuffed did the police officer discover a pistol in the suspect's motorcycle. *Id.* The Fifth Circuit found that the eyewitness accounts and their identification of the suspect before the arrest provided the officer with probable cause that the suspect committed the crime. *Id.* at 778.

Here, the store clerks positively identified Diaz to Officer Peterson. Diaz had not left the store before the officers arrived. Each store clerk told Officer Peterson what they had seen, and it was consistent with what they had told their manager. The second clerk was not present when Officer Peterson spoke to the first clerk, but his recollection corroborated the first statement. Officer Peterson had sufficient information to believe there was probable cause to arrest Diaz for possession of child pornography.

The Court holds that Diaz's arrest by Officer Peterson was supported by probable cause and did not violate Diaz's Fourth Amendment rights.

### B. Admissibility of Evidence

Finding that Diaz's arrest was lawful, the Court turns to whether the confession Diaz made to the detectives at the ICAC unit is admissible.[2] A confession made by a suspect under arrest may be suppressed if the police officer fails to first administer *Miranda* warnings. *Oregon v. Elstad*, 470 U.S. 298, 309 (1985); *United States v.*

---

[2] The Government agrees not to use the unmirandized confession made by Diaz at the Walgreens. The Court thus focuses the analysis on the statements made after Diaz received his *Miranda* warnings from the detectives.

*Courtney*, 463 F.3d 333, 336 (5th Cir. 2006). However, "a subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." *Courtney*, 463 F.3d at 338 (quoting *Elstad*, 470 U.S. at 314)). A post-warning confession is suppressed, however, if the officer engaged in a two-step strategy to coerce or improperly obtain the confession from the suspect. *Missouri v. Seibert*, 542 U.S. 600, 610-11 (2004). An interrogating officer employs the two-step strategy by first deliberately withholding *Miranda* warnings until a suspect confesses. *Id.* at 610-11. The officer then uses the confession against the suspect to obtain a post-warning confession. *Id.* at 611.

If there is no two-step strategy, then the question turns to whether the post-warning statement was made voluntarily. *United States v. Lim*, 897 F.3d 673, 692 (5th Cir. 2018) (finding that a post-warning statement was voluntary when the suspect confessed but then later invoked his right to remain silent). The court must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in determining whether the second statement was voluntarily made. *United States v. Nunez-Sanchez*, 478 F.3d 663, 669 (5th Cir. 2007) (internal quotation marks and citation omitted).

There is no evidence that Officer Peterson used any two-step strategy to coerce Diaz to confess. Although Diaz was handcuffed at the time, the video recording shows that Officer Peterson calmly asked Diaz in a conversational tone about the contents of his phone. Later, the detectives read Diaz his *Miranda* rights and he waived each right in a

signed statement. Detective Escobar testified that she was not aware of Diaz's first confession when she interviewed him. Therefore, she did not use his pre-warning confession against him. Further, Diaz felt comfortable enough to invoke his rights and deny consent for the detectives to search his phone. But, he still proceeded to make incriminating statements. Diaz's post-warning statements were voluntary and are not entitled to suppression.

Because Officer Peterson had probable cause to arrest Diaz based on possession of child pornography, Diaz's initial arrest was lawful. The Government has also met its burden to show that Diaz's waiver of his *Miranda* rights was voluntary. Accordingly, the post-warning statements and the photos are admissible.

## CONCLUSION

For the reasons set forth above, Defendant Manuel Diaz's motion to suppress (D.E. 17) is DENIED.

ORDERED this 16th day of October, 2018.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE